IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| HARRY GOSIER, N84288, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| LATOYA HUGHES, ) | |
| ROB JEFFREYS, ) | |
| DR. MEYERS, )  Case No. 26-cv-133-DWD | |
| JOHN M. BARWICK, ) | |
| WEXFORD HEALTH SOURCES, INC., ) | |
| WARDEN KARALIS, ) | |
| JOHN DOE 1 (IA OFFICER), ) | |
| JOHN DOE 2 (IA OFFICER), ) | |
| JOHN/JANE DOE 1 (RN), ) | |
| JOHN DOE 3 (C/O), ) | |
| JOHN DOE 4 (C/O), ) | |
| ) | |
| Defendants.[1] ) | |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Harry Gosier, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Pinckneyville Correctional Center (Pinckneyville), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. (Doc. 1). Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for multiple conditions. Plaintiff's Complaint (Doc. 1) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A,

---

[1] The Clerk of Court is **DIRECTED** to **CORRECT** John/Jane Doe 1 "RN" to read "Jane Doe RN" consistent with Plaintiff's list of parties (Doc. 1 at 4), and to ADD John/Jane Doe "N/P" as a new party, because this party was properly listed in Plaintiff's complaint (Doc. 1 at 4).

the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## The Complaint

Plaintiff alleges that in July of 2022, his health declined, with frequent spells of dizziness, fatigue, headaches, weakness, and intermittent pain. (Doc. 1 at 7). Plaintiff sought assistance from John Does 3 and 4 (five-day gallery officers that worked his gallery), but they ignored his requests and refused to summon help from healthcare. Even when Plaintiff pushed his emergency button, John Does 3 and 4 did not respond. (*Id.* at 7-8). Plaintiff alleges that he suffered a life-altering stroke in August of 2022, but John Does 3 and 4 walked by his cell for several days and refused assistance. He alleges he was left for dead, did not eat or drink for days, and called for help to no avail. (*Id.* at 8).

At some point he was taken to the healthcare unit where Defendants John/Jane Doe NP and Jane Doe (RN) took his vitals but did nothing else. (Doc. 1 at 8). He alleges that Defendant Dr. Meyers was notified that he had experienced a stroke, but Meyers did nothing. Instead, Meyers directed that Plaintiff be returned to his cell. He alleges that John Does 3 and 4 roughly placed him in a wheelchair and threw him into his cell

paralyzed.  He claims that when he was tossed in his cell he felt severe pain in his spine but was unable to move or adjust his position.  He alleges he laid in distress for days without eating or drinking, and no one checked on him.  (Doc. 1 at 8-9).

On September 1, 2022, a non-party correctional officer observed Plaintiff in distress and took him to the medical unit.  Plaintiff alleges that he was received at the medical unit soaked in urine and in extreme pain.  He begged for care, but on September 5, 2022, he was still in urine-drenched clothing.  He alleges that on September 5, 2022, he asked Defendant Jane Doe RN for a change of clothing, but she refused and also did not provide an IV or food.  (Doc. 1 at 9-10).  On September 5, 2022, Plaintiff was transferred to an outside hospital for management of an epidural abscess.  (*Id.* at 10).  He alleges that hospital records document him as "poorly responsive" and covered in urine.  After diagnostic imaging, Plaintiff was transferred to SLU where he received surgery for an abscess.  He alleges that his medical records demonstrate that prison nursing staff knew his skin was decaying due to urine but did nothing.  (*Id.* at 11).

Plaintiff alleges he remained hospitalized for two months, and he continued to suffer from pain, dizziness, confusion, urinary incontinence, and paralysis.  (Doc. 1 at 11-12).  Upon return to the prison, Plaintiff claims he remained in the prison infirmary for seven months under the care of Dr. Meyers, John/Jane Doe NP, Jane Doe RN, and Wexford's staff.  (*Id.* at 12).  He alleges that for the entire seven months he complained about the lack of pain medication, physical therapy, and the lack assistance with tasks like eating and bathing to Meyers, John/Jane Doe NP, Jane Doe RN and several Wexford employees.  (*Id.*).  He also alleges the cell was filthy and infested with mice, cockroaches,

and spiders. (*Id.*). He complained to Dr. Meyers, John/Jane Doe NP, Jane Doe RN, and several Wexford employees about his weight loss due to his inability to eat, but they dismissed and ignored his complaints. (*Id.* at 13).

Plaintiff alleges he was returned to general population in poor physical condition with intermittent paralysis, headaches, spinal pain, weakness, confusion, and difficulty breathing. (Doc. 1 at 13). He alleges that he complained to Defendants Dr. Meyers, John/Jane Doe NP, Jane Doe RN, Wexford, John Does 1-2 (internal affairs), Warden Karalis, Warden Barwick, and Hughes about these problems either in conversation, or via detailed letters and emergency grievances, but his complaints were ignored. (*Id.* at 13-14).

Plaintiff alleges that in July of 2023 he was bitten by 20-30 brown recluse spiders and had 20-30 holes ranging from pea to golf ball sized in his flesh. (Doc. 1 at 14). He alleges he tried for several weeks to get healthcare, and wrote personal letters to Defendants Dr. Meyers, John/Jane Doe NP, John Does 1-2 (internal affairs), and a warden in July of 2023 to no avail. (*Id.*). Plaintiff eventually fainted from pain and was taken to the healthcare unit on July 28, 2023. (*Id.* at 15). Plaintiff claims a golf ball sized lesion was documented and he was given Bactrim to apply. (*Id.*). Plaintiff alleges he complained to Dr. Meyers that the Bactrim caused pain and did not relieve his symptoms. He asked Defendants John Doe 1-2, Dr. Meyers, and John/Jane Doe NP in August of 2023 to send him to the hospital for the alleged bites.

He claims that at an August 5, 2023, medical appointment, Jane Doe RN deliberately mis-recorded and misdiagnosed his condition as an allergic reaction. (Doc.

1 at 15-16).  He alleges Dr. Meyers was informed of the incorrect information, and Jane Doe RN ultimately prescribed Benadryl.  (*Id.* at 16).  On August 11, 2023, Plaintiff was seen again in the healthcare unit, at which point staff allegedly believed he had suffered from bed bug bites and quarantined his property.  (*Id.*).  He claims he continued to ask to be seen by Dr. Meyers, and eventually on August 15, 2023, a nurse placed him on Dr. Meyers' list.

Plaintiff alleges that between August 15-19, 2023, he complained to John Does 1-2 that Dr. Meyers and nursing staff were not providing any care, and his condition was worsening.  (Doc. 1 at 17).  On August 22, 2023, he claims internal affairs took pictures of festering wounds on his legs but did not intervene to ensure he received care.  He claims John Does 1 and 2 saw wounds as large as golf balls but refused his requests for care.  (*Id.*).   Plaintiff claims he wrote emergency grievances on August 17 and 28, 2023, and on August 28, 2023, his grievances were declared an emergency.  (*Id.* at 18).  He additionally claims that over the next year he wrote several grievances, letters, and certified mail to Defendants Karalis, Barwick, and Hughes pertaining to his stroke and festering wounds. He claims that even though a letter was stamped as received by Hughes' office on January 22, 2024, he continues to suffer pain from his stroke and wounds.  (*Id.*).

Plaintiff alleges that Wexford and its staff have a policy, custom, or practice of misdiagnosing or underdiagnosing patients to save money.  (Doc. 1 at 19).  He further alleges staff are trained to provide the "most basic minimal level of care despite how emergent" the medical situation is.  (*Id.*).  He alleges that only taking his vitals after an alleged stroke, and deeming 20-30 oozing wounds a rash, are examples of deliberate

misdiagnosis.  He writes, "who prescribes Benadryl for saliently oozing, bloody, golf-ball sized wounds all over? Wexford, that's who."  (*Id.* at 19).

As relief, Plaintiff seeks monetary damages.  (Doc. 1 at 20).  In support of the complaint, he submitted photographs of his legs from August of 2023.  (Doc. 1 at 21-24).

Based on the allegations in the Complaint, the Court will designate the following claims:

**Claim 1:** **Eighth Amendment deliberate indifference claim against Defendants John Does 3-4, Dr. Meyers, John/Jane Doe NP, and Jane Doe RN for their alleged deliberate indifference in relation to Plaintiff's condition from August of 2022-September 5, 2022 when he was hospitalized;**

**Claim 2:** **Eighth Amendment deliberate indifference claim against Dr. Meyers, John/Jane Doe NP, and Jane Doe (RN) for the care in the prison infirmary for seven months following Plaintiff's hospitalization;**

**Claim 3:** **Eighth Amendment deliberate indifference claim against Defendants John Does 1-2, Wardens Barwick and Karalis, and Hughes for failing to investigate Plaintiff's in-person complaints or grievances and letters about his condition and lack of care after release from the prison's infirmary;**

**Claim 4:** **Eighth Amendment deliberate indifference claim against Defendants Dr. Meyers, John/Jane Doe (NP), and Jane Doe (RN) for their treatment of Plaintiff's lesions in July and August of 2023;**

**Claim 5:** **Eighth Amendment deliberate indifference claim against Defendants John Doe 1-2 (internal affairs), Wardens Barwick and Karalis, and Hughes for their handling of verbal requests, correspondence and emergency grievances about Plaintiff's wounds;**

**Claim 6:** ***Monell* claim against Wexford Health Sources, Inc., for their alleged policy, custom, or practice of training staff to misdiagnose or "under" diagnose conditions to delay care and save money.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court.  Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*.  See *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Preliminary Dismissal

Plaintiff named Rob Jeffreys, a former director of the IDOC, as a defendant in this suit.  Plaintiff never described Jeffreys by name in the factual allegations.  Naming a defendant without describing their personal role is insufficient to state a claim under § 1983.  *See*, *Black v. Lane*, 22 F.3d 1395, 1401 n.8 (7th Cir. 1994) (merely naming a defendant without describing his or her personal role is insufficient to state a claim); *Matz v. Klotka*, 769 F.3d 517, 528 (7th Cir. 2014) ("[I]ndividual liability under § 1983 requires personal involvement in the alleged constitutional deprivation").  Therefore, Jeffreys is dismissed without prejudice.

### Analysis

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010).  A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard).  *Id.*  To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to

inmate health.  *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).  Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference.  *Id.*  Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff's allegations in Claims 1, 2, and 4, that all pertain to individuals who personally saw and observed his condition, and allegedly failed or refused to provide care, are sufficient to proceed beyond initial review.  Additionally, Plaintiff alleges that the care he received was deficient because Wexford maintained a custom, policy, or practice of training nurses to misdiagnose or under-diagnose conditions to delay care and save money, thus resulting in the allegedly inadequate responses to his alleged stroke and sores.  Ultimately, this claim will require significant development of the record, but at this early juncture, it is clearly pled and is adequately connected to Plaintiff's experience such that Claim 6 may proceed against Wexford.

By contrast, Claims 3 and 5 against John Does 1-2, Wardens Barwick and Karalis, and Hughes are deficient in some respects.  These Defendants are all non-medical prison employees, with Defendants Barwick, Karalis, and Hughes holding high-level supervisory roles.  Though a claim against a high-level supervisor can in some circumstances be premised on the assertion that they turned a blind-eye to highly detailed correspondence, not all such claims succeed.  *See e.g., Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) (highly detailed correspondence to a prison administrator that they ignore may form the basis for deliberate indifference); *but see, Hayes v. Snyder*, 546

F.3d 516, 527-28 (7th Cir. 2008) (administrators who promptly responded to an inmate's correspondence about deficient care, investigated, and then relied on the judgment of treating providers, were not deliberately indifferent).  As to the issues with alleged post-stroke care, it appears that Plaintiff did not begin to complain or grieve these issues until *after* he was released from the prison infirmary, but he is not specific about when he started to raise complaints, how often he raised them, how many times he sent correspondence to each of these defendants, or what the correspondence said.  The allegations against John Does 1-2, Barwick, Karalis, and Hughes are all too vague in relation to the care (or lack thereof) that Plaintiff alleges he received after his alleged stroke.  Claim 3 will be dismissed as inadequately pled.

In relation to the sores, Plaintiff alleges that John Does 1-2 photographed his wounds and refused to intervene in the care or lack of care.  Plaintiff attached photographs of his wounds.  At this early juncture, the allegation that John Does 1-2 saw festering wounds and refused to even probe the matter is enough to proceed on Claim 5.  By contrast, Plaintiff may not proceed against the Wardens or Hughes because he does not provide enough detail about their involvement, and the little he provides suggests that emergency grievances about the issue were at least expedited.  Without more information on what was done with the grievances, or what other correspondence may have been sent, Claim 5 cannot proceed against Hughes or Wardens Barwick and Karalis.

### Disposition

**IT IS HEREBY ORDERED THAT** the Clerk of Court shall **CORRECT** John/Jane Doe 1 "RN" to read "Jane Doe RN" as indicated in Plaintiff's complaint, and **ADD** John/Jane Doe NP as a defendant consistent with footnote 1.

**Claim 1** of the Complaint (Doc. 1) survives against Defendants John Does 3-4, Dr. Meyers, Jane Doe (RN), and John/Jane (NP), **Claims 2 and 4** proceed against Dr. Meyers, John/Jane Doe (NP), and Jane Doe (RN), **Claim 6** may proceed against Wexford Health Sources, Inc., and **Claim 5** may proceed against John Does 1-2.   **Claim 3** is dismissed without prejudice as insufficient, and **Claim 5** is dismissed without prejudice as insufficiently pled against Defendants Hughes and Wardens Barwick and Karalis.  The Clerk of Court shall **TERMINATE** Defendants Hughes, Jeffreys, Barwick, and Karalis because Plaintiff has failed to state a claim against these parties.

The Clerk shall **ADD** the Warden of Pinckneyville in official capacity for any potential future injunctive relief and to help identify John Does 1-4, John/Jane Doe (NP), and Jane Doe (RN).  **Plaintiff shall have 21 days to file a notice with descriptive information about John Does 1-4, John/Jane Doe (NP), and Jane Doe (RN).  He shall include physical appearance, dates when he interacted with these defendants, nicknames, and any other information he possesses.**  Failure to file a notice may result in the dismissal of the unnamed parties.  Once Plaintiff has filed his Notice, the Court shall set a deadline for the Warden to respond.

The Clerk of Court is **DIRECTED** to prepare for Defendants Dr. Meyers, Wexford Health Sources, Inc., and the Warden of Pinckneyville (official capacity): (1) Form 5

(Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

**IT IS SO ORDERED.**

Dated: May 5, 2026

/s *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.